UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

JOHN NYPL, et al.,                              :
                                                :
                                Plaintiffs,     :
                                                :
                -against-                       :
                                                :
JP MORGAN CHASE & CO., et al.,                  :
                                Defendants.     :

---------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___06/08/2016___
```

15 Civ. 9300 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs, representing a putative class of consumers and end-user businesses, sue several banks for allegedly engaging in an unlawful conspiracy to fix foreign currency exchange rates. On January 29, 2016, Defendants moved for an order staying this case or, in the alternative, consolidating it with a related case, *In re Foreign Exchange Benchmark Rates Antitrust Litigation* ("*FOREX*"), No. 13 Civ. 7789 (S.D.N.Y.). For the following reasons, Defendants' motion is denied as to the request for a stay and granted in part with respect to consolidation.

I.      **BACKGROUND**

Plaintiffs are six individuals and businesses asserting injuries on behalf of a putative class of those who paid more in bank foreign currency exchange rates due to Defendants' alleged conspiracy to fix rates. On May 21, 2015, John Nypl filed suit in the United States District Court for the Northern District of California, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and various other claims under California law. On November 25, 2015, the case was transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), in part because Defendants are litigating similar claims in the consolidated *FOREX* proceedings.

As in *Nypl*, the operative *FOREX* complaint alleges an antitrust conspiracy to manipulate currency exchange rate benchmarks in violation of 15 U.S.C. § 1. By orders dated February 13,

2014, and August 13, 2015, various actions concerning alleged rate-fixing in the foreign exchange markets were consolidated, and interim lead counsel were appointed.  On December 15, 2015, after a conference that counsel for the *Nypl* plaintiffs attended, an order was issued in the *FOREX* case preliminarily approving settlement agreements with nine defendant groups, conditionally certifying settlement classes, and appointing class counsel and class representatives for the *FOREX* settlement classes.  Each *Nypl* defendant is a settling defendant in the *FOREX* action.

On January 29, 2016, Defendants filed the instant motion to stay the *Nypl* case or, in the alternative, consolidate it with the *FOREX* action.

## II.   DISCUSSION

### A.  Motion for a Stay

Defendants argue that a stay is required because the Court's December 15, 2015, order which granted preliminarily approval of various settlement agreements in *FOREX* (the "Preliminary Approval Order"), enjoins Plaintiffs from prosecuting their claims here.  For the following reasons, Defendants' motion for a stay is denied.

In relevant part, the Preliminary Approval Order provides:

> All proceedings in the Action with respect to the Settling Defendants are stayed until further order of the Court, except as may be necessary to implement the settlements set forth in the Settlement Agreements or comply with the terms thereof.  *Pending final determination of whether the settlements set forth in the Settlement Agreements should be approved, each Class Plaintiff and each Class Member, either directly, representatively, or in any other capacity, shall be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties*, and shall not sue any of the Released Parties on the basis of any Released Claims or assist any third party in commencing or maintaining any suit against any Released Party in any way to any Released Claim.

*FOREX*, ECF No. 536 ¶ 21 (emphasis added).

The injunction by its terms applies only to "each Class Plaintiff and each Class Member." These terms are defined in the *FOREX* settlement agreements.  In substance, "Class Plaintiff" means the entities and individuals who are the named plaintiffs in the *FOREX* action.  "Class Member" means a member of one of the settlement classes who has not filed a valid exclusion. The Preliminary Approval Order identifies two "Settlement Classes":

> **The Direct Settlement Class**:  All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States, transacted FX Instruments in the United States or its territories [and] . . .

> **The Exchange-Only Settlement Class**:  All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange.

The *FOREX* settlement agreements define "FX Instruments" as "FX spot transactions, forwards, swaps, futures, options, and any other FX instrument or FX transaction the trading or settlement value of which is related in any way to FX rates;" and define "FX Exchange-Traded Instruments" as "any and all FX Instruments that were listed for trading through an exchange, including, but not limited to, FX futures contracts and options on FX futures contracts."

In contrast to the *FOREX* action, which defines class membership based on the plaintiffs' involvement with "FX Instruments" and "FX Exchange-Traded Instruments," the operative complaint in *Nypl* ("SAC" for Second Amended Class Action Complaint) defines its class as "[a]ll consumers and businesses in the United States who directly purchased supracompetitive foreign currency exchange rates from Defendants and their co-conspirators *for their own end use* at least since January 1, 2007 to and including class certification."  SAC ¶ 19; *see also id.* ¶ 1 (describing "a nationwide class of consumers and end user businesses").

3

Defendants argue that the *Nypl* class "is subsumed" within the *FOREX* Direct Settlement Class because *Nypl* class members "engaged in FX spot market transactions with the Defendants."  But Plaintiffs' class definition does not suggest that *Nypl* class members transacted with Defendants on the "FX spot market."  The *Nypl* class definition describes "consumers and businesses" that purchased foreign currency "for their own end use," and references the "FX spot market" only to exclude from the class "competitors of the Defendants who are in the FX Spot Market."  SAC ¶ 19.  While the SAC discusses *Defendants'* conduct in the FX spot market, it does so only to describe the alleged mechanism through which Plaintiffs' prices became "supracompetitive," and does not imply that the *Nypl* class members were themselves participants in that market.

Consistent with this reading of the SAC, counsel for plaintiffs in both the *Nypl* and *FOREX* actions disavow any overlap in the two cases' classes.  According to the *FOREX* plaintiffs, "the *Nypl* Action seeks relief on behalf of a class of 'end users' who purchased currencies at the retail level whereas *In re FX* seeks relief on behalf of a class of 'OTC purchasers' who traded FX Instruments over the counter via voice or electronic means and a class of 'exchange purchasers' who traded FX Instruments on exchanges, such as the Chicago Mercantile Exchange ('CME')."  Counsel in the *Nypl* action have represented to *FOREX* counsel that the *Nypl* plaintiffs were neither "OTC purchasers" nor "exchange purchasers" as defined in the *FOREX* settlement agreements, and that they did not intend for their class to overlap with those in *FOREX*.  Hausfeld Decl. ¶¶ 5–6.  As the *Nypl* plaintiffs elaborate: "The *Nypl* end-user purchases of foreign currency for end-uses, who take delivery of foreign currency for purchasing goods and services are completely different from the computer generated [electronic communication network] *FX* spot trading in the *FX* market."  Pls.' Br. 3.

4

Defendants' motion "seeks confirmation that the [Preliminary Approval] Order enjoins Nypl from prosecuting this action pending this Court's determination whether to finally approve the *In re FX* settlements."  Defs.' Br. 8.  Based on the class definitions in the two cases and the foregoing representations of the *FOREX* and *Nypl* plaintiffs, the *Nypl* plaintiffs are not included in the *FOREX* settlement classes.  Without any apparent overlap in membership between the *Nypl* and *FOREX* classes, the injunction in the *FOREX* Preliminary Approval Order does not extend to the *Nypl* plaintiffs.  Defendants' motion for a stay is therefore denied.

### B.  Motion to Consolidate

Alternatively, Defendants ask that this case be consolidated with the *FOREX* action.  For the following reasons, Defendants' request is granted in part, and the two actions are consolidated for discovery.  The issue of whether *Nypl* and *FOREX* should be consolidated for trial can be addressed later.

Pursuant to Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  "The Rule should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion."  *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks and citations omitted).  District courts are afforded "broad discretion" to make consolidation determinations.  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

The core allegations in both the *FOREX* and *Nypl* complaints describe the same conduct by Defendants.  The time period covered by the *Nypl* action (from January 1, 2007), falls within

the time period for the *FOREX* action (from January 1, 2003), and each of the *Nypl* defendants are named defendants in the *FOREX* matter.  The primary differences between the two cases are the definitions of the classes each purports to cover, and the manner in which their respective class members would have to establish causation.  Due to the abundance of common questions of law and fact between the two cases, pre-trial consolidation under Rule 42 is appropriate.

Plaintiffs' arguments in opposition to consolidation are unavailing.  Plaintiffs argue that consolidation is inappropriate because preliminary approval was granted for the settlement agreements in the *FOREX* action only one day after they were notified of the hearing, and due process requires their fuller participation.  To the extent Plaintiffs fear that their claims will be released at the final fairness hearing, their continued ability to participate in the approval process negates their due process claim.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" and Plaintiffs retain the ability to object to the settlement agreements and participate in the final fairness hearing.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also* Manual for Complex Litigation § 21.634, p. 322 (4th ed. 2004) (describing procedures for fairness hearings).  As discussed above, however, the *Nypl* plaintiffs' claims are unlikely to be released by any final approval of the settlements if the classes in *FOREX* and *Nypl* are defined so as to avoid overlapping membership.

Plaintiffs also argue that the cases should remain separate because their claims rest on different factual allegations, and because the two cases are in different stages of preparation. The only suggested factual differences pertain to what Plaintiffs describe as differences in "the impact and injury" suffered by foreign exchange traders versus those who purchased foreign currency as "end users."  While the *Nypl* and *FOREX* plaintiffs may require different proof of

6

causation and damages, discovery into the various co-conspirators' conduct -- and the determination of this conduct's legality -- are common to both cases.  Any prejudice to consolidation may be addressed, if necessary, through separate trials.  *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . . .").

Consolidation also will not prejudice Plaintiffs' ability to conduct discovery or cause undue delay.  Although the *Nypl* defendants have reached settlements in *FOREX*, discovery into the alleged conspiracy in the foreign exchange markets is ongoing, and the settling *FOREX* defendants will be subject to non-party discovery if the settlement agreements gain final approval.  Finally, even if discovery in the *FOREX* actions has until now focused on the impact on FX traders, discovery into end users would not delay prosecution of the *Nypl* plaintiffs' claims, as they have yet to begin discovery.

## III.  CONCLUSION

For the foregoing reasons, the motion for a stay is DENIED and the motion to consolidate is GRANTED in part.  The Clerk of Court is directed to close the motion at Dkt. No. 97 and consolidate this case for discovery with Case No. 13 Civ. 7789.

SO ORDERED.

Dated: June 8, 2016
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE