USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
   JOHN NYPL, et al.,
                                 Plaintiffs,

              -against-

   JPMORGAN CHASE & CO., et al.,
                                 Defendants.
------------------------------------------------------------ X

15 Civ. 9300 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Defendants Barclays PLC ("BPLC"), HSBC Holdings plc, The Royal Bank of Scotland Group plc ("RBS Group plc"), The Royal Bank of Scotland plc ("RBS plc") and UBS AG (collectively, the "Foreign Defendants") move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the motion is granted with respect to HSBC Holdings plc and RBS Group plc but denied with respect to the other Foreign Defendants.

## I.   BACKGROUND

       Plaintiffs[1] commenced this putative class action under the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1 et seq., alleging that they paid inflated foreign currency exchange rates caused by an alleged conspiracy among Defendants[2] to fix prices in the foreign exchange ("FX") or foreign currency market. Plaintiffs allegedly purchased foreign currency from Defendants in the consumer retail market. Plaintiffs allege that there is a "mechanical,

---

[1] The named plaintiffs are John Nypl; Lisa McCarthy; Mad Travel, Inc., a.k.a. Travel Leaders; Valarie Jolly; Go Everywhere, Inc.; and William Rubinsohn, d.b.a. Rubinsohn Travel.
[2] In addition to the movants, the other defendants are JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; J.P. Morgan Bank, N.A.; Bank of America Corporation; Bank of America, N.A.; HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; Citicorp; Citigroup, Inc.; Citibank, N.A.; and Barclays Capital, Inc.

direct correlation" between the FX benchmark rates that Defendants allegedly manipulated and the prices that Defendants charged Plaintiffs. Specifically, Plaintiffs allege that the prices Defendants charged for foreign currency in the consumer retail market were the benchmark rates on the day of the transaction plus a small handling fee or commission.

The Second Amended Complaint was dismissed in its entirety because it did not sufficiently plead antitrust standing, and Foreign Defendants' previous Rule 12(b)(2) motion was denied as moot. *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2017 WL 1133446, at *4, *8 (S.D.N.Y. Mar. 24, 2017). In an Opinion and Order dated August 3, 2017, Plaintiffs were granted leave to file their Third Amended Complaint ("TAC'") pursuant to Federal Rule of Civil Procedure 15(a)(2).[3] *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2017 WL 3309759, at *8 (S.D.N.Y. Aug. 3, 2017). The TAC asserts claims under the Sherman Act and California state law.

## II. STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *see also Troma Entm't, Inc., v. Centennial Pictures Inc.,* 729 F.3d 215, 217 (2d Cir. 2013). On a "Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

Plaintiffs' factual allegations are assumed to be true for purposes of the motion, and "pleadings and affidavits [are construed] in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id.* Courts will not, however, resolve "argumentative inferences in the

---

[3] A fuller description of Plaintiffs' allegations is found in the August 3, 2017, opinion.

2

plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

## III. DISCUSSION

A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) "a statutory basis for personal jurisdiction that renders such service of process effective" and (3) that "the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)). The Foreign Defendants have accepted service through counsel and do not contest that the Sherman Act provides the statutory basis for personal jurisdiction. The parties' dispute therefore concerns whether or not the exercise of personal jurisdiction would violate constitutional due process.

Plaintiffs assert three alternative grounds for personal jurisdiction over each of the Foreign Defendants: (1) consent, (2) general jurisdiction and (3) specific jurisdiction.

### A. Consent to Jurisdiction

A court's exercise of personal jurisdiction comports with due process if a defendant has consented to appear in that forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 755–56 (2014) (describing general jurisdiction as an alternative to a foreign corporation's "consent[] to suit in

the forum"). Plaintiffs claim that Foreign Defendants consented to the Court's jurisdiction in this case at a January 5, 2017, criminal sentencing hearing before Judge Stefan R. Underhill of the U.S. District Court for the District of Connecticut. Plaintiffs mischaracterize those proceedings. The transcripts show that no Foreign Defendant consented to the Court's jurisdiction in this action in particular. Rather, Defendants merely argued that the plea agreement, which did not provide for restitution, was acceptable because civil litigation before this Court provided a preferable avenue for compensating victims.

Defendant RBS plc noted that it had reached a settlement in a separate class action before this Court, but this does not imply consent to the Court's jurisdiction in this case. "[A] party's consent to jurisdiction in one case . . . extends to that case alone and in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)).

B. **General Jurisdiction**

Plaintiffs do not make a prima facie showing to support general jurisdiction over the Foreign Defendants. None of the Foreign Defendants is incorporated or maintains its principal place of business in the United States, and while at least three of the five conduct substantial operations in the United States, none is "essentially at home" in this country, as required for the exercise of general jurisdiction.

"[A] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State." *BNSF Ry.*

*Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (emphasis added) (quoting *Daimler*, 134 S. Ct. at 754). The "paradigm" forums for general jurisdiction over a corporation are "the corporation's place of incorporation and its principal place of business." *Id.* (quoting *Daimler*, 134 S. Ct at 760; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Otherwise, courts should find general jurisdiction only in "exceptional" cases. *Tyrrell*, 137 S. Ct. at 1558. The Second Circuit in *Gucci Am., Inc. v. Weixing Li* held that a foreign bank with "only four branch offices in the United States and only a small portion of its worldwide business . . . conducted in New York" was not "an exceptional case." 768 F.3d 122, 135 (2d Cir. 2014); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business— the 'paradigm' cases.").

Under *Tyrrell*, Plaintiffs have failed to make a prima facie showing that the Foreign Defendants are subject to general jurisdiction. In particular:

- A declaration from the Group Chief of Staff and Company Secretary for BPLC states that BPLC is incorporated under the laws of England and Wales, has its registered office in London, England and has no other offices. BPLC does not broker trades or employ interdealer market brokers.

- A declaration from the Deputy Group Company Secretary for HSBC Holdings plc states that it is incorporated under the laws of England and Wales, has its registered office in London, England and has no offices, branches or places of business in the United States. HSBC Holdings plc does not sell foreign currency to banking customers in the United States. A declaration from the holding company's Group Chief Accounting Officer states

5

- that in 2015, approximately 91% of the holding company's external net operating income was derived from outside the United States.

- A declaration from a Director, Counsel in the wholesale Corporate and Institutional Banking business of the family of corporations ultimately owned by RBS Group plc states that both RBS Group plc and RBS plc are headquartered and incorporated in Scotland with their principal place of business in the United Kingdom. RBS Group plc has no offices or operations in the United States and is not in the business of FX transactions. Until recently, RBS plc's operations in the United States consisted of one branch office each in New York and Connecticut, and representative offices in Chicago, Houston, Jersey City, and San Francisco.[4] Currently, RBS plc's presence in the United States consists of one branch office in Stamford, Connecticut and a license for a representative office in Jersey City. Only thirty-one of RBS plc's tens of thousands of employees worldwide are based in the United States.

- A declaration from a corporate and governance attorney and Executive Director at UBS AG states that UBS AG is incorporated in Switzerland and has its headquarters and principal place of business in Zurich and Basel respectively. UBS AG has four branches in New York, two branches each in California and Florida, and one branch each in

---

[4] The Foreign Defendants do not dispute that their contacts throughout the United States are considered for personal jurisdiction purposes. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) ("[P]ersonal jurisdiction in federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United States as a whole."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* No. 11 MDL 2262, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015); *SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) (holding that "the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state").

Connecticut and Illinois.  As of 2015, a majority of UBS AG's total worldwide operating income was attributable to regions outside the United States.

Plaintiffs assert without analysis that Defendants meet the *Tyrrell* standard based on admissions in the Plea Agreements and Deferred Prosecution Agreement, and on internet advertising accessible to consumers in the United States and New York.  Plaintiffs have failed to show that any of these Foreign Defendants presents an "exceptional" case.  *Tyrrell*, 137 S. Ct. at 1558.  Based on the Foreign Defendants' sworn statements -- which Plaintiffs do not contradict -- Plaintiffs cannot make a prima facie showing of general jurisdiction over any of the Foreign Defendants.

      **C.**      **Specific Jurisdiction**

Plaintiffs have made a prima facie showing of specific jurisdiction over BPLC, RBS plc and UBS AG because the allegations in the TAC give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States.  Plaintiffs have not made a prima facie showing of specific jurisdiction over HSBC Holdings plc and RBS Group plc, which do not engage in FX activity in the United States or even operate or maintain offices here.

As opposed to general jurisdiction, specific jurisdiction depends on "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'"  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 131 S. Ct. at 2851); *see also Waldman*, 835 F.3d at 335 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.") (quoting *Walden v. Fiore*,

7

134 S. Ct. 1115, 1121 (2014)). In other words, "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum." *Walden*, 134 S. Ct. at 1121. Minimum contacts to support specific jurisdiction "exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab*, 883 F.3d at 82 (quoting *Licci*, 732 F.3d at 170).

Specific jurisdiction exists "when the cause of action arises out of the very activity being conducted, in part," inside the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). It may also exist even if none of the relevant conduct took place inside the forum, under the "effects test." *Charles Schwab*, 883 F.3d at 82; *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243 (2d Cir. 2007) (describing "independent, if conceptually overlapping, methods of demonstrating minimum contacts"). "The 'effects test' theory of personal jurisdiction is typically invoked where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff.'" *Charles Schwab*, 883 F.3d at 87 (quoting *Licci*, 732 F.3d at 173). For these claims, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant *expressly aimed its conduct at the forum*." *Id.* (emphasis added). "[T]he fact that harm in the forum is foreseeable is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *Waldman*, 835 F.3d at 339 (quoting *In re Terrorist Attacks*, 714 F.3d at 674).

The TAC's core allegation is that Defendants conspired to fix benchmark FX rates for their own profit, and these benchmark rates bore a "mechanical, direct correlation" to the rates

Defendants charged Plaintiffs in the consumer retail market. *See Nypl*, 2017 WL 3309759 at *1.

Specifically, the TAC alleges:

> 39. Since at least January 1, 2007, Defendants have entered into a combination and conspiracy to fix, manipulate and rig the Benchmark exchange rates or "Fix" rates in the Benchmark exchange rates market. The U.S. Department of Justice entered into Plea Agreements regarding manipulation of the FX Benchmark exchange rates by Defendants The Royal Bank of Scotland PLC, UB AG . . . Barclays PLC . . . and a Deferred Prosecution Agreement with HSBC USA, N.A. and HSBC Holdings, PLC.
>
> 40. Plaintiffs and the consumer and business end-user class (hereafter "Plaintiffs") purchased price-fixed foreign currency from Defendants at the FX Benchmark exchange rates derived from FX spot trading plus a small commission. Defendants sold foreign currency to Plaintiffs and the putative consumer and end-user business class at supracompetitive Benchmark exchange rates, derived from trading in the FX spot market, plus a small handling fee.

Based on these descriptions of unlawful conduct, personal jurisdiction over the New Defendants turns on whether Plaintiffs sufficiently alleged conspiratorial communication or unlawful manipulation of the Fixes either taking place in, or directed into, the United States.[5]

The TAC contains allegations that tie the alleged unlawful conduct to the United States. For instance:

- [A] substantial part of the events giving rise to plaintiffs' claims occurred in this District, [and] a substantial portion of the affected interstate trade and commerce described herein was carried out in this District.

- Defendants[] engaged in conduct in combination and conspiracy to fix foreign currency exchange rates prices and impose Trade Restraints in the State of California that substantially affected interstate commerce throughout the United States.

- The conspiracy to set, fix and establish foreign currency Benchmark exchange rates and impose Trade Restraints was implemented in California and New York and the Defendants have enforced their price-fixing conspiracy and Trade Restraints in California and New York . . . . The illegal conduct allegedly undertaken has resulted in injury and damage to plaintiffs and the class within the States of California and New York and throughout the United [S]tates . . . .

---

[5] As noted above, the Foreign Defendants' contacts throughout the United States are considered for personal jurisdiction purposes. *See, e.g.*, *Straub*, 921 F. Supp. 2d at 253.

Plea agreements with the Department of Justice signed by officers of BPLC, RBS plc and UBS AG in a criminal case in the District of Connecticut, which are appended to the TAC, add specificity and plausibility to these allegations. In particular, the BPLC and RBS plc plea agreements state:

> During the Relevant Period, the defendant and its co-conspirators purchased and sold substantial quantities of the EUR/USD currency pair in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce to customers and counterparties located in U.S. states other than the U.S. states or foreign countries in which the defendant agreed to purchase or sell these currencies. The business activities of the defendant and its co-conspirators in connection with the purchase and sale of the EUR/USD currency pair, were the subject of this conspiracy and were within the flow of, and substantially affected, interstate and U.S. import trade and commerce. The conspiracy had a direct effect on trade and commerce within the United States, as well as on U.S. import trade and commerce, and was carried out, in part, within the United States.

Both plea agreements further state: "Acts in furtherance of the charged offense were carried out within the District of Connecticut and elsewhere." Exhibit 1 of UBS AG's plea agreement, which details the company's participation in the conspiracy to fix FX benchmark rates, states:

> At relevant times herein, UBS was an FX dealer/market maker, with FX trading desks in the following main locations: Stamford, Connecticut; Singapore; and Zurich, Switzerland, and FX Distribution (sales) desks in Stamford; Zurich; Singapore; and London, United Kingdom.

These allegations are sufficient to plausibly state that at least part of the alleged conspiratorial conduct of BPLC, RBS plc and UBS AG took place in, or was directed into, the United States.

Foreign Defendants argue that "Plaintiffs at best allege in the TAC a conspiracy only in the FX spot market" and label Plaintiffs' allegations connecting this conduct to the retail market conclusory. Foreign Defendants claim that "disregarding conclusory allegations, Plaintiffs' averments in the TAC and submissions with their Opposition do not indicate that the Foreign Defendants participate in the alleged FX consumer retail market in the United States." This argument is unavailing. Even if Foreign Defendants' "non-conclusory" allegations of collusive

10

conduct connected to this forum were limited to the spot market, the TAC plausibly alleges that Plaintiffs were consumers in another market directly restrained by manipulation of that market. *Nypl*, 2017 WL 3309759 at *4. The TAC alleges that the manipulated FX benchmark rates were the primary component of the prices Plaintiffs paid for foreign currency in the consumer retail market, thus sufficiently alleging antitrust injury resulting from Foreign Defendants' conduct in the spot market. *Id.* at *5; *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 765 (2d Cir. 2016) (plaintiffs sufficiently alleged antitrust injury where they claimed to have purchased financial instruments with rates of return pegged to LIBOR from defendant banks responsible for setting the benchmark rate). Specifically, Plaintiffs allege that they "purchased price-fixed foreign currency from Defendants at the Benchmark exchange rates derived from . . . spot trading plus a small commission." Plaintiffs do not have the burden of proving a conspiracy to manipulate the retail FX market directly. The TAC's allegations of a conspiracy in the FX spot market, combined with its allegations of the linkage between benchmark and retail rates, suffice.

Taken as a whole, the TAC plausibly alleges suit-related conduct that either took place in the United States, or had effects expressly aimed inside the United States due to the Foreign Defendants' substantial FX businesses here. Construing the pleadings and declarations in the light most favorable to Plaintiffs, *Dorchester*, 722 F.3d at 85, the Foreign Defendants' suit-related conduct created a substantial connection with this forum, *Walden*, 134 S. Ct. at 1121, and Plaintiffs have made a prima facie showing of specific jurisdiction over BPLC, RBS plc and UBS AG.

Plaintiffs have not, however, made a prima facie showing of specific jurisdiction over HSBC Holdings plc and RBS Group plc. In contrast with the other Foreign Defendants, HSBC Holdings plc and RBS Group plc are foreign parent holding companies, not banks or dealers in

any foreign currency exchange market. They do not have operations in the United States. The TAC contains no allegations of suit-related conduct specific to HSBC Holdings plc. Moreover, the attached 2012 deferred prosecution agreement concerns anti-money laundering violations, not FX price fixing, and fails to describe suit-related conduct by HSBC Holdings plc in particular. As to RBS Group plc, the TAC contains no allegations of suit-related conduct specific to the holding company, and the attached plea agreement and Federal Reserve Bank and U.S. Commodity Futures Trading Commission order likewise do not name RBS Group plc.

Nor can Plaintiffs rely on conspiracy jurisdiction as to HSBC Holdings plc or RBS Group plc. To allege a conspiracy theory of personal jurisdiction: "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab*, 883 F.3d at 87. As discussed, the TAC does not make a prima facie showing that HSBC Holdings plc and RBS Group plc participated in the conspiracy because it fails to allege any suit-related conduct in any jurisdiction as to these two holding companies, as opposed to their subsidiaries.

Plaintiffs claim without factual support that various subsidiaries of each holding company formed a "single economic unit" with their corporate parent which "enveloped their subsidiaries into their conspiracy," and that the actions of the subsidiaries should thus be attributed to the parents. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). Plaintiffs do not provide sufficient facts or argument in support of a veil-piercing or alter ego analysis. Plaintiffs argue that there is no basis for distinguishing between parents and their subsidiaries because of

12

text from their websites "using only their logo name . . . and waiv[ing] any distinction between their various legal entities and brick and mortar addresses."  Plaintiffs cannot avoid HSBC's and RBS's corporate form based on these allegations alone.  *See Balintulo v. Ford Motor Co.*, 796 F.3d 160, 168 (2d Cir. 2015) ("While courts occasionally 'pierce the corporate veil' and ignore a subsidiary's separate legal status, they will do so only in extraordinary circumstances . . . .").

In light of the foregoing, Plaintiffs' allegations do not make a prima facie showing of specific jurisdiction over HSBC Holdings plc or RBS Group plc.  As Plaintiffs have not made a prima facie showing of personal jurisdiction over these two holding companies, Plaintiffs' claims against HSBC Holdings plc or RBS Group plc are dismissed.

## IV. CONCLUSION

For the foregoing reasons, (i) the motions of BPLC, RBS plc and UBS AG to dismiss for lack of personal jurisdiction are DENIED; and (ii) the motions of HSBC Holdings plc and RBS Group plc to dismiss for lack of personal jurisdiction are GRANTED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 202.

Dated: March 22, 2018
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE