UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN NYPL, et al.,
                              Plaintiffs,

                      15 Civ. 9300 (LGS)
            -against-

                    ORDER

JP MORGAN CHASE & CO., et al.,
                             Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       WHEREAS, on May 20, 2015, certain plea agreements ("Plea Agreements") were executed between the United States Department of Justice ("DOJ") and Barclays PLC, Citicorp, JPMorgan Chase & Co., Royal Bank of Scotland PLC, and UBS AG. Plaintiffs represent that the factual statements included in the Plea Agreements originated from a DOJ investigation (Dkt. No. 490);

       WHEREAS, on the same day, the signatories on behalf of Barclays PLC, Citicorp, JPMorgan Chase & Co., Royal Bank of Scotland PLC appeared in court and answered in the affirmative to the inquiry whether "they understand and agree with the summary of their respective plea agreements." The signatory on behalf of UBS AG separately appeared and answered in the affirmative to the inquiry whether, "the company engage[d] in the conduct attributed to it in the statement of facts." (Dkt. No. 490);

       WHEREAS, Plaintiffs seek to depose the signatories to the Plea Agreements (the "Signatory Witnesses") and/or corporate representatives designated under Rule 30(b)(6) who are knowledgeable about the Plea Agreements, on topics limited to those agreements (the "30(b)(6) Witnesses") (Dkt. Nos. 490, 512);

       WHEREAS, Plaintiffs served deposition notices on the Signatory Witnesses and argue that they are entitled to question the Signatory Witnesses about (1) their "knowledge of the facts"

underlying the Plea Agreements; and (2) "facts provided to the government." (Dkt. No. 490);

WHEREAS, Plaintiffs served 30(b)(6) notices with the following relevant topic:

The facts supporting [each bank]'s guilty plea to violations of Section 1 of the Sherman Act (15 U.S.C. § 1) in May 2015 in the United States District Court for the District of Connecticut as set forth in its Plea Agreement at [the DOJ's website], and any sentencing regarding such guilty plea.  (Dkt. No. 521);

WHEREAS, Defendants object, *inter alia*, on the basis of the attorney-client privilege (Dkt. Nos. 490, 503);

WHEREAS, pursuant to this Court's Order on February 24, 2020, on March 16, 2020, Defendants filed affidavits from the Signatory Witnesses describing how they came to have knowledge of the matters underlying the Plea Agreements.  They state the following:

Rohan Weerasinghe, Esq., General Counsel and Corporate Secretary, Citigroup Inc., was a signatory of the plea agreement that Citicorp, a subsidiary of Citigroup Inc., entered into with the DOJ.  Mr. Weerasinghe attests that he has "no personal knowledge of the FX trading activities that were the factual basis for the offense charged in the Plea Agreement," and any knowledge he has about the facts underlying the Plea Agreement came from privileged communications with in-house and outside counsel, received in his capacity as General Counsel "for the purpose of providing legal advice to Citigroup in connection with FX-related matters."  (Dkt. No. 505).

Matthew S. Fitzwater, Esq., then-Americas Head of Litigation, Investigations, and Enforcement, Barclays PLC, signed the plea agreement between Barclays PLC and the DOJ.  Mr. Fitzwater attests that he has "no first-hand knowledge of the facts underlying" the plea agreement, and that any knowledge he has about those facts was provided to him "exclusively in [his] role as counsel" by outside counsel "or other internal Barclays counsel or through [his] own participation, as counsel to Barclays, in the investigation" "to facilitate [his] legal representation of Barclays concerning FX-related matters." (Dkt. No. 506).  A supplemental affidavit clarified

2

that the referenced investigation was an "investigation that Barclays' Legal Department conducted with the assistance of outside counsel to respond to inquiries by the [DOJ] and other regulatory agencies regarding Barclays' foreign exchange ("FX") operations starting in approximately the Summer of 2013."  (Dkt. 534).

James B. Fuqua, Esq., then-General Counsel and Managing Director, UBS Investment Bank Americas, signed the plea agreement between UBS AG and the DOJ.  Mr. Fuqua attests that he does "not recall having first-hand knowledge of the alleged misconduct underlying UBS's LIBOR plea agreement or the attached Factual Basis for Breach relating to the FX business," and that any knowledge he has of those facts was "provided to [him] by inside and outside counsel exclusively as part of legal advice to facilitate execution of the agreement." (Dkt. No. 507).

Stephen M. Cutler, Esq., then-General Counsel of JPMorgan Chase & Co., signed the plea agreement between JPMorgan Chase & Co. and the DOJ.  Mr. Cutler attests that he has "no first-hand knowledge of the facts underlying JPMorgan's Plea Agreement" and any knowledge that he possesses about those facts was gained "exclusively in [his] role as General Counsel . . . either from [outside counsel] or internal JPMorgan counsel or through [his] own participation, as counsel to JPMorgan, in the investigation", "to facilitate [his] legal representation of JPMorgan concerning FX-related matters."  (Dkt. No. 508).  A supplemental affidavit clarified that the referenced investigation was an "internal investigation conducted by in-house and outside counsel to JPMorgan, undertaken to provide legal advice in connection with ongoing and anticipated investigations conducted by the [DOJ] and other government agencies into JPMorgan's foreign exchange operations, in anticipation of related civil litigation, and once litigation commenced in November 2013, in connection with ongoing litigation."  (Dkt. 535).

James M. Esposito, Esq., then-United States General Counsel and Co-General Counsel of

3

The Royal Bank of Scotland plc (now known as NatWest Markets Plc), signed the plea agreement between The Royal Bank of Scotland plc and the DOJ.  He attests that he has "no first-hand knowledge of the facts underlying" the plea agreement and any knowledge of those facts "derives exclusively from privileged communications made to [him] in [his] role . . . as part of the FX-related investigation conducted by" in-house and outside counsel, "so that [he] could provide legal advice to RBS concerning FX-related matters."  (Dkt. No. 509);

      WHEREAS, communications between Defendants' employees and Defendants' counsel during an internal investigation, undertaken to provide legal advice in connection with anticipated or ongoing litigation,  are privileged.  *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (holding that communications during internal investigation between corporate employees and counsel were protected by attorney client privilege because "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").  Counsel may not be deposed about facts learned solely from such communications.  *See United States v. Cunningham*, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982) (observing that a client's "counsel may not be examined as to communications from [the client] and may not be examined as to facts he learned only from such confidential communications"); *Camp v. Berman*, No. 14 Civ. 1049, 2015 WL 3917538, at *4 (S.D.N.Y. June 25, 2015) (holding that questions of an attorney regarding "confidential communications with [his client] – or as to any facts that he learned solely from such communications" – are protected by the attorney-client privilege and therefore off-limits during a deposition).  Rule 30(b)(6) depositions are not to be used to access privileged information.  *See In re Zyprexa Prod. Liab. Litig.,* No. 04 MD 1596, 2009 WL 9522945, at *2 (E.D.N.Y. Feb. 18, 2009) (where plaintiff sought a 30(b)(6) deposition regarding the terms of a

4

corporate defendant's guilty plea agreement, the court barred the deposition because, *inter alia*, "[t]he information sought concerns corporate, not individual, motivations and conduct, and the most knowledgeable witnesses undoubtedly derived their information as or through counsel")[1];

WHEREAS, Defendants represent that they "lack access to employees with first-hand nonprivileged knowledge relating to the communications and conduct upon which the relevant DOJ Agreements were based."  (Dkt. No. 503).  It is hereby

**ORDERED** that the deposition notices to the Signatory Witnesses are quashed to the extent that they seek information about the facts underlying the Plea Agreements, because the Signatory Witnesses have such information only through protected attorney-client communications.

Defendants are relieved of their obligations to produce a Rule 30(b)(6) witness to testify about the facts underlying the Plea Agreement based on their representations that (1) they do not have access to anyone who has first-hand, non-privileged responsive information, and (2) the only basis to prepare a witness with non-privileged material is with same chat transcripts and other documents that are equally available to Plaintiffs.

---

[1] Plaintiffs' caselaw is not to the contrary.  *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a *witness* while acting for his client in anticipation of litigation." (emphasis added)); *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006) (permitting a 30(b)(6) deposition where Sprint had not established in its briefing that "every relevant piece of information regarding 'preparing, filing and revising' Sprint's Patents" was privileged); *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (addressing the obligations of a 30(b)(6) witness generally, and noting that "clients cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from *independent sources*." (internal quotation marks omitted and emphasis added)).  To the extent that the holding in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14 Civ. 2058, 2015 WL 12953930, at *4 (N.D. Cal. July 22, 2015), directing the *in camera* submission of interview memoranda, suggests that a 30(b)(6) witness can be questioned regarding facts obtained by counsel from employees about an internal investigation in anticipation of litigation without breaching the attorney-client privilege, this Court respectfully disagrees.

Plaintiffs argue that the Signatory Witnesses waived any privilege over facts discovered in Defendants' internal investigations because the witnesses "executed [the Plea Agreements] under oath, which included detailed factual statements originating from the DOJ investigation that defendants claim is privileged[, and] admitted in open court that they knew the facts supporting their pleas."  (Dkt. No. 490).  Plaintiffs' reliance on Federal Rule of Civil Procedure 502(a) is misplaced.  That rule applies only after a disclosure in a federal proceeding or to a federal office or agency has been found to effect a waiver; the rule then addresses the extent to which that waiver extends to other proceedings.  The rule does not address whether a waiver occurred in the first instance. Plaintiffs cite to no authority that supports their argument, nor is the Court is aware of any.[2]

Plaintiffs also argue that "much of the information in [Defendants' internal] investigation[s] was disclosed by Defendants during the course of the federal proceedings against them to regulators or in open court, in the guilty pleas and in the deferred prosecution agreements, and in discussions with federal officials at the Department of Justice."  (Dkt. No. 512).  But Plaintiffs present no evidence that Defendants disclosed privileged information to the

---

[2] Plaintiffs' case law is inapposite.  *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (finding trader's voluntary submission of legal memorandum to Securities and Exchange Commission ("SEC"), with whom trader stood in adversarial position as subject of SEC investigation in connection with which memorandum was sought, waived protections of work product doctrine in instant case); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400 (S.D.N.Y. 2014) (finding party waived attorney-client privilege as to certain conversations with his attorney and documents concerning the same subject matter when he testified at his deposition about the contents of those conversations); *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002) (quashing 30(b)(6) deposition topic because, "[u]nder the guise of requesting 'facts' that defendants contend changed their view of the transactions, plaintiff is really requesting defendants' mental impressions, conclusions, opinions, and legal theory"); *In re Leslie Fay Companies, Inc. Sec. Litig.*, 161 F.R.D. 274 (S.D.N.Y. 1995) (holding, *inter alia*, that production of audit committee's report to the SEC waived attorney-client privilege over report and documents underlying report, to the extent that underlying documents did not contain legal analysis or advice not contained or discussed in report).

6

DOJ, including any facts underlying the Plea Agreements. This argument is accordingly rejected, but without prejudice to Plaintiffs' seeking discovery of information that was disclosed to the Government. It is further

**ORDERED** that the parties are directed to meet and confer regarding Defendants' proposed compromise at Dkt. No. 503. It is further

**ORDERED** that the parties shall file a joint letter by **May 19, 2020**, outlining (1) the parties' agreement; and (2) any remaining disputes, with the parties' respective positions and supporting facts and legal authority.

Dated: May 5, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**