By ECF                                                                                          May 19, 2020

The Honorable Lorna G. Schofield
U.S. District Court, Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *Nypl, et al. v. JPMorgan Chase & Co., et al.,*
              S.D.N.Y. Case No. 1:15-CV-09300 (LGS)

Dear Judge Schofield:

      Your Honor's Order of May 5, 2020 (ECF No. 538, the "May 5 Order") directed the parties to (a) meet and confer regarding the discovery compromise proposal that certain defendants conveyed to plaintiffs on March 16, 2020 (ECF No. 503), and (b) file a joint letter addressing any remaining disputes. The parties met and conferred on May 14, 2020. The parties' disputes are outlined below.

I.      <u>Plaintiffs' Position</u>

      Plaintiffs have met and conferred with the Defendants about their proposed compromise, as directed by the Court, and believe that the Defendants' suggestions have already been established by their Answers to the Third Amended Complaint ("TAC"), the Plea Agreements, the Notices of Disclosure, the Authorizations by the Boards of Directors and the admissions in open court and the findings and sentencings before the Honorable Stefan R. Underhill, Judge, United States District Court for the District of Connecticut (Bridgeport) and the Honorable Robert N. Chatigny, Judge, United States District Court for the District of Connecticut (Hartford).

      a.      <u>Authenticity</u>.
      The Plea Agreements themselves, affirmed in open court, the deferred prosecution agreements, and the other government documents referenced in the TAC and admitted in the Answers to the TAC attest to the authenticity of the documents and the signatories. Rule 901 FRE.

      b.      <u>Authority to sign the agreements</u>.
            See (a) above.

      c.      <u>The Plea Agreements actually reflect the Defendants' agreements with the Department of Justice</u>.
            See (a) above.

      d.      <u>Employment related information concerning traders.</u>
            See (a) above.

     e.     <u>Confirmation that chat transcripts came from the Defendants' IT systems</u>. See (a) above.

Remaining Disputes

On May 5, 2020, Judge Schofield issued an Order in which the Court allowed the *Nypl* Plaintiffs without prejudice to seek "discovery of information that was disclosed to the Government." (ECF No. 538).

Pursuant to that Order, on May 6, 2020, the *Nypl* Plaintiffs noticed the depositions of the signatories to the Plea Agreements and Deferred Prosecution Agreement and also noticed the 30(b)(6) depositions of Defendants Bank of America, Barclays, Citibank, HSBC, JPMorgan, RBS and UBS for the specific purpose of discovery of "information that was disclosed to the Government."

Plaintiffs gave two to three weeks advance notice in order to comply with the June 1, 2020 fact discovery deadline.

In addition, on May 11, 2020, the *Nypl* Plaintiffs served their Second Set of Interrogatories to the Defendants again specifically directed to the "information that was disclosed to the Government." Also, on May 11, 2020, the *Nypl* Plaintiffs served their Fourth Set of Request for Production of Documents again specifically seeking those documents with "information that was disclosed to the Government." Finally, on May 11, 2020, the *Nypl* Plaintiffs served their Third Set of Interrogatories asking only for summaries of all retail sales of euros for dollars by each Defendant during the time period January 1, 2007, through December 31, 2013.

Defendants have objected to the depositions, and have stated they will not attend. The Defendants' objections are largely the same as those previously considered and decided by the Court. None of those objections, as the Court previously noted, preclude inquiry into information that the Defendants have provided to the government.

The purpose of these depositions is to inquire into any information provided to the government by Defendants, including the economic data given to the government for the purpose of calculating the fines that Defendants were forced to pay, which evidence will support Plaintiffs' calculation of damages because the fines were determined on the basis of two times the profits or two times the losses to the victims.

In addition, Plaintiffs have been prohibited from taking the depositions of the signatories and Rule 30(b)(6) witnesses regarding their violations, the impact on the Plaintiffs and the estimated amount of damages to the Plaintiffs and the class.

Moreover, Plaintiffs have been prevented from obtaining discovery relating to purchases by Plaintiffs and the Plaintiff class, regardless of the means used to make such purchases, whether by check, by wire, by credit card or debit card, or any other means used in which the

Plaintiffs and the putative class have their dollars deducted and/or debited from Plaintiffs' bank accounts in the United States.

Plaintiffs have been prevented from obtaining the retail sales from Defendants.

Plaintiffs have been prevented from obtaining the executive summaries from the Defendants with regard to their admitted violations, impact on the Plaintiffs and the estimated amount of damages.

Finally, Plaintiffs have been prevented from deposing Bank of America on the issues of the violation, the impact on the Plaintiffs and the estimated amount of damages.

II.     Defendants' Position

Section A below provides background on the disputes addressed in this letter, and on the Court's prior findings in the May 5 Order.  Section B describes plaintiffs' rejection of defendants' compromise proposal to provide relevant discovery in written responses in lieu of the apex and 30(b)(6) depositions sought by plaintiffs.  Section C explains defendants' objections to the renewed deposition notices plaintiffs served the day after the Court issued the May 5 Order quashing similar prior notices.  Section D identifies certain specific issues and objections that apply to plaintiffs' notices to HSBC and UBS.

**A.     Background**

In January 2020, plaintiffs served notices seeking to take depositions of senior lawyers and other executives of certain defendants (the "Apex Executives"), some of whom signed Plea Agreements (the "DOJ Agreements") with the U.S. Department of Justice ("DOJ") in 2015.  Plaintiffs also issued Rule 30(b)(6) notices asking defendants to produce corporate representatives for depositions on various topics, including (for certain defendants) the facts underlying the DOJ Agreements.

After extensive submissions from the parties,[1] the Court issued the May 5 Order quashing these deposition notices.  *See* ECF No. 538.  With respect to the Apex Executives, the Court found that the requested depositions would invade privilege because "communications between Defendants' employees and Defendants' counsel during an internal investigation, undertaken to provide legal advice in connection with anticipated or ongoing litigation, are privileged," and "[c]ounsel may not be deposed about facts learned solely from such communications." *Id.* at 4.  Based on declarations submitted by the Apex Executives, the Court concluded that privilege concerns were implicated because the individuals had information about the facts underlying the DOJ Agreements "only through protected attorney-client communications." *Id*. at 5.  The Court

---

[1] The Court's Order of February 24, 2020 (ECF No. 498) quashed plaintiffs' Rule 30(b)(6) notices to defendants Bank of America Corporation and Bank of America, N.A. (together, "Bank of America"), non-party Merrill Lynch, Pierce, Fenner & Smith Incorporated, and HBSC Bank USA, N.A. and HSBC North America Holdings, Inc. (together, "HSBC") in their entirety.  Bank of America and HSBC accordingly did not join the letters that preceded the May 5 Order.

also quashed the 30(b)(6) notices seeking testimony on the same subject matter, based on defendants' representations that "(1) they do not have access to anyone who has first-hand, non-privileged responsive information, and (2) the only basis to prepare a witness with non-privileged material is with same chat transcripts and other documents that are equally available to Plaintiffs." *Id.* at 5.

The Court also rejected plaintiffs' argument that defendants had waived privilege when they negotiated and entered into the DOJ Agreements, "without prejudice to Plaintiffs' seeking discovery of information that was disclosed to the Government." *Id.* at 7. Finally, the Court directed the parties to meet and confer about the discovery compromise certain defendants previously offered to provide information concerning the DOJ Agreements through written representations. *Id.* (citing ECF No. 503).

The day after the May 5 Order, plaintiffs issued a new round of notices seeking to depose the same Apex Executives as well as Rule 30(b)(6) witnesses for each defendant bank concerning "[t]he 'information that was disclosed to the Government' as referred to by the Court in its May 5, 2020 Order (Dkt. No. 538)."[2] Plaintiffs made no effort to define "information" or "the Government."

### B. Defendants' Compromise Proposal

During the prior briefing, defendants proposed a compromise approach that would provide plaintiffs with reasonable discovery concerning the DOJ Agreements without violating privileges. Defendants offered to provide written confirmations of certain factual matters relating to the DOJ Agreements, such as:

  a) the authenticity of the bank representatives' signatures on the DOJ Agreements;

  b) the Signatories' authority to sign on behalf of their respective institutions;

  c) that the DOJ Agreements accurately reflect agreements reached with DOJ;

  d) employment-related information about the traders who participated in the chatroom at issue, including management and HR determinations involving these traders, to the extent applicable and permissible under relevant law; and

  e) confirmation that chat transcripts from the chatroom referenced in the DOJ Agreements came from IT systems used by employees of defendants.

*See* Defendants' Letter dated Mar. 16, 2020, ECF No. 503.

When the parties met and conferred on May 14, defendants confirmed that this offer still stands, despite the Court's Order quashing plaintiffs' January deposition notices. Defendants also agreed to consider providing representations on other factual matters relating to the DOJ Agreements, and invited plaintiffs to identify other areas on which they are seeking information that could be provided in written representations. Plaintiffs again rejected and declined to

---

[2] On May 13, 2020, plaintiffs withdrew their Rule 30(b)(6) deposition notice to Bank of America. Bank of America accordingly is not joining this letter.

engage on this proposal, and refused to consider any compromise that did not include the noticed Apex Executive and 30(b)(6) depositions.

### C.  Plaintiffs' Renewed Deposition Notices

While this Court's prior orders have not precluded "discovery of information that was disclosed to the Government" in relation to the DOJ Agreements (May 5 Order, ECF No. 538 at 6-7), plaintiffs' renewed deposition notices are not an appropriate or reasonable way to pursue that discovery.[3]

<u>Apex Executive Depositions</u>.  The renewed Apex Executive notices raise the same issues that led the Court to quash plaintiffs' prior notices to these same individuals.  As the Apex Executives confirmed in their declarations, each defendant hired outside counsel to conduct its FX investigation, including responding to government requests.  It was those outside counsel who took the lead on advocacy before and negotiations with the Government, not the Apex Executives, who obtained knowledge concerning the matters addressed by the DOJ Agreements from privileged communications with counsel or through their own role as counsel to the defendant banks.  The notices should (again) be quashed based on the witnesses' lack of first-hand non-privileged information.  *See* May 5 Order, ECF No. 538 at 4-5.

Even if the "information disclosed to the Government" itself is not privileged, allowing plaintiffs to seek depositions on that topic would still "present a host of attorney-client privilege and work product issues." *In re Zyprexa Prods. Liab. Litig.*, 2009 WL 9522945, at *2 (E.D.N.Y. Feb. 18, 2009) (citation and internal quotations marks omitted).  Defendants worked with their in-house and outside counsel to develop strategies for conducting the investigations, responding to Government requests, advocating before the Government, deciding how to resolve the investigations, and negotiating the plea or deferred prosecution agreements with the Government.  Although the limited information disclosed to the Government may not be privileged, all of this other information would be.  And defendants have even more reason to be concerned about the privilege issues these depositions would pose in light of plaintiffs' prior representation to the Court that they were seeking deposition testimony on "what documents [defendants] really relied upon and which documents show the violation which they have pled guilty to."  (ECF No. 223 at 9).  *See U.S.* v. *Mejia*, 655 F. 3d 126, 134 (2d Cir. 2011) ("Advising a client on whether to plead guilty is indeed a basic, and indispensable, function of a defense attorney in a criminal case.") (citations omitted).

<u>30(b)(6) Depositions</u>.  The renewed 30(b)(6) notices are similarly objectionable.

*First*, the noticed depositions would invade privilege. The persons who would have first-hand knowledge about the information that was disclosed to the Government in the course of the DOJ's investigation would be the lawyers who represented the banks.  Plaintiffs' notices would require defendants to designate as their witnesses either these lawyers, or representatives of the

---

[3]     Defendants served objections to plaintiffs' renewed deposition notices and sought to discuss those objections with plaintiffs during the May 14 meet and confer, but plaintiffs were unreceptive to any proposal that would not include the depositions they are seeking.

banks who would be relying on information conveyed by the lawyers in the course of privileged conversations. Courts have recognized that this is not an appropriate use of Rule 30(b)(6). *See, e.g., Zyprexa*, 2009 WL 9522945, at *1-2 (granting protective order against 30(b)(6) deposition regarding basis for a corporation's guilty plea because the "most knowledgeable witnesses undoubtedly derived their information as or through counsel"); May 5 Order, ECF No. 538 at 4-5 (following *Zyprexa* in quashing the prior 30(b)(6) notices in this case).

Quashing these notices will by no means deny plaintiffs reasonable access to the "information that was disclosed to the Government." In fact, plaintiffs have already received voluminous productions of "information that was disclosed to the Government" by the defendants in the course of the investigations that led to the DOJ Agreements. For example, Citi produced over half a million pages of documents to plaintiffs in November 2017, two and a half years ago, consisting of the same prior regulatory production materials that were provided to the plaintiffs in the *In re Forex* action (No. 13-cv-7789). This production included, among other materials, chatroom transcripts, emails, policies, manuals, handbooks, disciplinary files, employment records, and organization charts.

While these documents provide a clear picture of the information that was disclosed to the Government in relation to Citi's Plea Agreement, it is unclear if plaintiffs have even reviewed them. In April 2018 – more than four months after this production was made – plaintiffs' counsel informed Citi that plaintiffs had been unable to access the documents on the hard drive Citi had previously provided. Citi promptly sent another hard drive. On February 27, 2020 – 27 months after the initial production – plaintiffs' counsel again told Citi that they had been unable to access the documents on the hard drive. Citi promptly provided a third copy of this production. Plaintiffs' lack of diligence in actually evaluating the previously provided "information that was disclosed to the Government" weighs against permitting plaintiffs to pursue the problematic proposed depositions at issue here.

The circumstances with respect to other banks with relevant DOJ Agreements are similar. For example, JPMorgan produced more than a million pages of documents to plaintiffs in November 2017. This production consisted principally of the contemporaneous documents previously provided to the DOJ in response to requests in connection with the investigation leading to JPMorgan's Plea Agreement. Other banks produced similar sets of prior regulatory production materials, including Barclays (approximately 875,000 pages), UBS (over 300,000 pages), and RBS (over 120,000 pages).[4]

When the parties met and conferred on May 14, defendants asked plaintiffs if they had any particular questions about the previously produced materials that had been disclosed to the Government, which (as noted above) have been in plaintiffs' possession for two and a half years. Plaintiffs did not identify any such questions or any omissions from the long-ago productions.

---

[4] In late January 2020, plaintiffs' counsel asked RBS to send the password needed to open RBS's production of documents previously provided to the Government, a production that was originally made in late 2018.

Defendants remain willing – as explained above in the discussion of the compromise proposal the Court asked the parties to discuss – to provide written representations concerning factual matters relating to the DOJ Agreements. Under the circumstances, and for all the reasons explained above, this is a more appropriate discovery approach than the depositions plaintiffs are again seeking.

*Second*, plaintiffs' 30(b)(6) notices seek testimony plaintiffs are barred from seeking under the Stipulation and Order Concerning Deposition Coordination (the "Deposition Stipulation"), which restricts plaintiffs to seeking Rule 30(b)(6) testimony from defendants "on topics limited to" the DOJ plea agreements and deferred prosecution agreements. ECF No. 425 at 2; see also ECF No. 498 at 2-3 (Order quashing plaintiffs' prior Rule 30(b)(6) notices and topics to the extent they extended beyond those agreed to in the Deposition Stipulation). Here, plaintiffs claim to seek 30(b)(6) testimony on "information that was disclosed to the Government as referred to by the Court in its May 5, 2020 Order," which goes beyond the more limited, stipulated scope. Indeed, when the parties met and conferred on May 14, plaintiffs stated that by "Government" they meant more than just the DOJ, and that they sought 30(b)(6) testimony on information disclosed to other government agencies besides DOJ, something the stipulation clearly precludes.

*Finally*, defendants should not be expected to appear for depositions on the late May dates unilaterally selected by plaintiffs' counsel while this dispute remains pending. Defendants have raised significant issues concerning the propriety of these depositions. It would be unreasonable for defendants to be required to produce witnesses before the Court has a chance to determine whether the depositions should go forward at all. Defendants raise this issue because during the May 14 meet and confer, plaintiffs took the position that the depositions must go forward as noticed even though defendants are seeking timely relief as explained in this letter. In the event the Court were to find that depositions should go forward, defendants of course would confer in good faith to find dates and times that are feasible for all counsel and the witnesses, even if those dates end up being after the June 1, 2020 fact discovery cut-off under the current case schedule.

### D.    Issues Specific to HSBC and UBS

HSBC. In January 2020, plaintiffs served three deposition notices on HSBC: two individual notices to Stuart Alderoty and Marc Moses, signatories of a December 11, 2012 Deferred Prosecution Agreement between the DOJ, HSBC Holdings plc, and HSBC Bank USA, N.A. (the "2012 DPA"); and one Rule 30(b)(6) notice.

On February 24, 2020, the Court issued an order quashing plaintiffs' deposition notices to the extent they exceeded the scope of the parties' Deposition Stipulation. ECF 498 at 2. That Order quashed plaintiffs' Rule 30(b)(6) notice to HSBC in its entirety. On April 8, 2020, the Court issued an order finding that the 2012 DPA was entirely irrelevant to plaintiffs' claims in this case and quashing plaintiffs' two individual deposition notices to Mr. Alderoty and Mr. Moses on this basis. ECF 514.

Disregarding the Court's findings in its April 8, 2020 Order, on May 6, 2020 plaintiffs re-issued individual deposition notices to Mr. Alderoty and Mr. Moses. Plaintiffs also served

another Rule 30(b)(6) deposition notice for HSBC, identifying as the sole topic "[t]he 'information that was disclosed to the Government' as referred to by the Court in its May 5, 2020 Order." The HSBC Defendants served written objections on May 13, 2020, and asked plaintiffs to withdraw the renewed deposition notices. Plaintiffs refused.

Plaintiffs' May 6, 2020 deposition notices to Mr. Alderoty and Mr. Moses should *again* be quashed because plaintiffs' only basis for noticing these depositions is that they were signatories to the 2012 DPA, and the Court has already ruled that the 2012 DPA is irrelevant. Plaintiffs' May 6, 2020 Rule 30(b)(6) notice to HSBC should be quashed for the same reason, and because the Court's May 5, 2020 Order did not involve or address either of the HSBC defendants.[5]

UBS. As explained in the parties' joint letter filed on January 31, 2020 (ECF No. 490), Mr. Weber did not sign any of the DOJ Agreements. As a result, Mr. Weber is not a Signatory Witness, and plaintiffs' renewed deposition notice to him violates the express limitations of the Deposition Stipulation. Thus, just as this Court quashed the prior deposition notice to Mr. Weber because he is not a Signatory Witness, *see* February 24, 2020 Order (ECF No. 498), so too should it quash plaintiffs' renewed deposition notice to Mr. Weber.

---

[5] HSBC has not entered into a Plea Agreement with the DOJ. In addition to the 2012 DPA, the Deposition Stipulation referenced a January 18, 2018 deferred prosecution agreement between the DOJ, HSBC Holdings plc (which has been dismissed for lack of personal jurisdiction) and HSBC Bank USA, N.A. (the "2018 DPA"). But plaintiffs have not referenced the 2018 DPA in either of their Rule 30(b)(6) deposition notices to HSBC. Had plaintiffs done so, or should plaintiffs attempt to do so in the future, HSBC would object because, in addition to similar privilege and apex concerns as those raised by other defendants in response to plaintiffs' January 2020 notices, the 2018 DPA is also irrelevant to plaintiffs' claims in this case.

Respectfully submitted,

| | |
|---|---|
| ALIOTO LAW FIRM | LAW OFFICES OF LINGEL H. WINTERS, A Professional Corporation |
| By: s/ Joseph M. Alioto* | |
|     Joseph M. Alioto | By: s/ Lingel H Winters* |
|     Theresa D. Moore |     Lingel H. Winters |
|     Jamie Miller | |

*Attorneys for Plaintiffs*

| | |
|---|---|
| SULLIVAN & CROMWELL LLP | COVINGTON & BURLING LLP |
| By: s/ Matthew A. Schwartz* | By: s/ Andrew A. Ruffino |
|     Matthew A. Schwartz |     Andrew A. Ruffino |
|     Matthew A. Peller |     Andrew D. Lazerow |
| *Attorneys for Defendants Barclays PLC and Barclays Capital Inc* | *Attorneys for Defendants Citicorp, Citigroup Inc. and Citibank, N.A.* |
| LOCKE LORD LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| By: s/ J. Matthew Goodin* | By: s/ Boris Bershteyn* |
|     Roger B. Cowie |     Boris Bershteyn |
|     Gregory T. Casamento |     Gretchen M. Wolf |
|     J. Matthew Goodin |     Tansy Woan |
|     Julia C. Webb |     Harry P. Koulos |
| *Attorneys for Defendants HSBC Bank USA, N.A. and HSBC North America Holdings, Inc.* | *Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.* |
| DAVIS POLK & WARDWELL LLP | GIBSON, DUNN & CRUTCHER LLP |
| | By: s/ Eric J. Stock* |
| By: s/ Paul S. Mishkin* |     D. Jarrett Arp |
|     Paul S. Mishkin |     Eric J. Stock |
|     Adam G. Mehes |     Melanie L. Katsur |
|     Maude Paquin | |
| *Attorneys for Defendant The Royal Bank of Scotland plc, now known as NatWest Markets Plc* | *Attorneys for Defendant UBS AG* |

*Signatures used with permission pursuant to S.D.N.Y. ECF Rule 8.5