```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
JOHN NYPL, et al.,                                           :
                                                             :
                                    Plaintiffs,              :      15 Civ. 9300 (LGS)
                                                             :
                -against-                                    :      OPINION AND ORDER
                                                             :
JP MORGAN CHASE & Co., et al.,                               :
                                                             :
                                    Defendants.              :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

This case concerns the impact of an alleged conspiracy among banks to fix prices in the foreign exchange ("FX") market on consumers' purchases of foreign currency with U.S. Dollars within the United States. Plaintiffs move to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) and for appointment of class counsel pursuant to Rule 23(g). Defendants Bank of America, N.A., Bank of America Corporation, Barclays Capital, Inc., Barclays PLC, Citibank, N.A., Citicorp, Citigroup, Inc., HSBC Bank (USA), N.A., HSBC North American Holdings Inc., JP Morgan Chase & Co., JPMorgan Chase Bank, N.A., Royal Bank of Scotland, plc, and UBS AG ("Defendants") move to exclude the report and testimony of Plaintiffs' expert Carl S. Saba. Plaintiffs move to exclude the rebuttal report and testimony of Defendants' expert Bruce A. Strombom. For the reasons below, the motion for class certification is denied. Defendants' *Daubert* motion is granted in part and denied in part. Plaintiffs' *Daubert* motion is denied.

I.   BACKGROUND

Familiarity with the underlying facts and procedural history is assumed. *See Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2017 WL 3309759 (S.D.N.Y. Aug. 3, 2017) (granting in part Plaintiff's motion for leave to file the Third Amended Complaint); *Nypl v. JPMorgan*

*Chase & Co.*, No. 15 Civ. 9300, 2018 WL 1276869 (S.D.N.Y. Mar. 12, 2018) (denying Defendants' motion to dismiss the Third Amended Complaint and granting in part Defendants' motion to limit the time period for Plaintiffs' claims). The facts below are taken from the parties' submissions in connection with the pending motions, and the Court resolves factual disputes as necessary for the disposition of the motions. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011); *accord Clune v. Barry*, No. 16 Civ. 4441, 2019 WL 3369455, at *2 (S.D.N.Y. July 26, 2019).

In sum, Plaintiffs, a group of individuals and businesses, allege that they purchased foreign currency from Defendants in the consumer retail market at manipulated rates. Plaintiffs allege that Defendants conspired to manipulate certain benchmark exchange rates that determined the retail prices they paid for foreign currency. The Plaintiffs base this allegation on plea agreements and government orders involving certain Defendants. Those plea agreements and Plaintiffs' allegations focus on two benchmarks: the WMR London closing fix ("the WMR fix") and the European Central Bank fix (the "ECB fix"). Defendants have presented uncontroverted evidence that they did not calculate retail exchange rates for consumers, such as Plaintiffs, based on the WMR and ECB fix benchmarks. Instead, each Defendant's rate was calculated by, or using data from, a third-party.

Plaintiffs' claims in this action are limited to transactions "involving foreign currency purchased with U.S. Dollars and physically received at Defendants' retail branches within the United States." Order dated Sept. 6, 2018, (Dkt. No. 349) at 1, 4. Plaintiffs' claims do not include "wire transfers" or "credit, debit and ATM card" transactions. *Id.*

## II. DISCUSSION

Plaintiffs seek to certify a nationwide class of "consumers and businesses in the United States who directly purchased supracompetitive foreign currency at Benchmark exchange rates from Defendants and their co-conspirators for their own end use" from January 1, 2007, to December 31, 2013.

### A. Daubert Motions

Plaintiffs and Defendants have each submitted an expert report in support of their respective positions on whether the putative class should be certified. In sum, Plaintiffs' expert opines that causation and damages can be proved on a class-wide basis, thereby supporting Plaintiffs' argument that common issues predominate as required for class certification under Rule 23(b)(3). Defendants' expert critiques Plaintiffs' expert and opines that damages and the related issue of injury-in-fact cannot be proved on a class-wide basis. Both Plaintiffs and Defendants have filed a *Daubert* motion to exclude the opinions of the other's expert. For the reasons below, Plaintiffs' motion is denied, and Defendants' motion is granted in part to exclude the regression analyses of Plaintiff's expert and denied in part.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts play a "'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

3

at hand.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021). "[A] slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *United States v. Jones*, 965 F.3d 149, 160 (2d Cir. 2020). The party proffering the expert bears the burden of establishing Rule 702's admissibility requirements by a preponderance of the evidence. *Id.* at 161.

The *Daubert* and Rule 702 concepts of "gatekeeping" and admissibility seem ill suited for a class certification motion, which is solely determined by the Court. There is no jury, no "gate" requiring threshold determinations of reliability, and no admission or exclusion of testimony before a separate fact finder. In substance, every objection goes to the weight of the expert's testimony. Although "[t]he Supreme Court has not definitively ruled on the extent to which a district court must undertake a *Daubert* analysis at the class certification stage," it has "offered limited dicta suggesting that a *Daubert* analysis may be required at least in some circumstances." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 (2d Cir. 2013); *accord In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D 5, 28-29 (S.D.N.Y. 2020). Because of this dicta, because Rule 702 provides a useful framework for evaluating expert testimony and because the parties have filed *Daubert* motions, this Opinion briefly addresses those motions separately before turning to Plaintiffs' class certification motion.

### 1. Plaintiffs' Expert Carl S. Saba

Defendants' motion to exclude the opinions of Plaintiffs' expert witness Carl S. Saba is granted in part and denied in part. Saba offers two opinions in support of class certification. First, Mr. Saba offers a causation opinion based on regression analyses -- that the FX Spot Market price, which Defendants allegedly manipulated, closely correlates with, and directly impacted, the end-user prices that class members paid on any given day for foreign currency. This opinion is in support of Plaintiff's argument that causation and injury can be proved on a class-wide basis.

Defendants argue Saba's regression analyses should be excluded because (i) they simply confirm uncontested facts, specifically that Defendants used early morning FX spot rates to calculate retail rates and (ii) Saba's underlying data is untethered to relevant facts because it analyzes transactions that are either wire transfers or were made in 2017, neither of which are relevant in this case. Plaintiffs do not directly address Defendants' second argument or attempt to justify why their expert relied on wire transfers for currency purchases, which are not at issue in this action, or transactions from 2017, which are outside of the class period. Because the regression analyses are based on data untethered to the facts of this case and Plaintiffs offer no basis to justify this shortcoming, the Saba report's regression analyses are not considered. *See Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 315-16 (S.D.N.Y. 2015) (excluding expert report where its modeling was "largely untethered from the actual facts" of the case).

Second, Mr. Saba opines that the aggregate amount of damages to class members can be determined on a class-wide basis by multiplying the overcharge Defendants caused by the volume of affected commerce. He asserts that the overcharge will be either 0.0003 (three percentage points or "pips") utilized by the Department of Justice or his own estimate of the effect of the

conspiracy on the exchange rate spread, with two examples of how the estimate might be made. He asserts that the volume will be based on the aggregate market share of Defendants in the relevant class transactions. Defendants do not challenge the basic formula for computing damages in an antitrust price manipulation case. Their objection is that Mr. Saba's methodology is unreliable because he fails to explain specifically how to determine the two variables in the formula -- overcharge and volume. Defendants affirmatively argue, supported by their own expert, that these issues cannot be determined on a class-wide basis in this case.

Because Mr. Saba's opinion is helpful in framing critical issues on this class certification motion -- namely whether there is a viable methodology for Plaintiffs to use common, class-wide proof to show injury-in-fact and damages -- his damages opinion is not excluded. That does not mean that his opinion is accepted as sufficient. The "rigorous analysis" of his damages model required by *Comcast* follows below. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[F]or purposes of Rule 23, courts must conduct a rigorous analysis to determine whether [a model supporting a plaintiff's damages case measures damages consistent with plaintiff's theory of the case]." (internal quotation marks omitted)).

### 2. Defendants' Rebuttal Expert Dr. Bruce A. Strombom

Plaintiffs' motion to exclude the testimony of Defendants' rebuttal expert witness Dr. Bruce A. Strombom is denied. Dr. Strombom offers two relevant opinions[1] -- first, that Mr. Saba fails to establish that Plaintiff can use class-wide proof to show causation and injury. Second, Dr. Strombom challenges Mr. Saba's opinion that damages can be shown using class-wide proof for

---

[1] Dr. Strombom's opinion criticizing Mr. Saba's regression analyses as flawed and unreliable is not discussed, since Defendants do not dispute the close correlation that the regression analyses show.

several reasons. One of these is that Mr. Saba "fails to account for netting and offsetting redemptions."

Plaintiffs argue that the netting of damages is contrary to principles of antitrust law and that Dr. Strombom is not qualified for asserting otherwise. This argument is incorrect. That plaintiffs in an antitrust action may recover only for their net injury is a common-sense and well-established principle. *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 563 (S.D.N.Y. 2017) ("[A]ny damages would need to be netted out as to each plaintiff to offset any benefit from defendants' manipulation in other transactions."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 7378980, at *18 (S.D.N.Y. Dec. 20, 2016) ("[P]laintiffs may ultimately recover only to the extent of their net injury, given that plaintiffs may well have benefited from LIBOR suppression in the same transaction or in a different transaction."), *rev'd and remanded on other grounds*, Berkshire Bank v. Lloyds Banking Grp. plc, No. 20-1987 Civ., 2022 WL 569819 (2d Cir. Feb. 25, 2022); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 489 (S.D.N.Y. 1987) ("An antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct." (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986))).

Relying on *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), and other cases, Plaintiffs erect a straw man to argue that netting damages is not permitted. *Hanover Shoe*, however, does not stand for that proposition but instead addresses the so-called "passing on" defense. The defendant had asserted that the plaintiff suffered no cognizable injury because the plaintiff had passed on the unlawful overcharge to its customers. *Id.* at 487-88. The

Supreme Court rejected this defense and held that the plaintiff had proved injury and the amount of its damages with proof that the defendant had overcharged it and the amount of the overcharge. *Id*. at 494. Passing on is not at issue in the instant case and is distinct from netting damages, which means here that, if illegal conduct caused a particular plaintiff both gains and losses, that plaintiff can recover only its net losses.

Plaintiffs also misconstrue Dr. Strombom's report to argue that it "opines that the price fixing conspiracy was 'episodic'" and therefore "contrary to the law." Dr. Strombom's report does not refer to the conspiracy as episodic, but rather refers to the underlying attempts at manipulation as episodic and multidirectional, consistent with the descriptions in the plea agreements that Plaintiffs relied on in bringing this case.

Plaintiffs' remaining arguments have no relation to Dr. Strombom's report, Rule 702 or the *Daubert* standard. For example, Plaintiffs cite three Supreme Court cases from the second quarter of the twentieth century to argue the existence of commonality among Plaintiffs, but do not connect those cases to any aspect of Dr. Strombom's report or testimony.

Plaintiffs' challenges to Dr. Strombom's opinions are without merit, and their motion to exclude his opinions is denied.

### B. Article III Standing

Defendants argue that none of the four named Plaintiffs have demonstrated Article III standing. As explained below, named Plaintiffs Lisa McCarthy and Valarie Jolly have sufficiently shown for this stage of the litigation that they have Article III standing to assert the two remaining causes of action -- price fixing in violation of Section 1 of the Sherman Act and its California counterpart, the Cartwright Act. Because only one named plaintiff must have standing with respect to each claim, *see Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 84 n.2 (2d Cir.

2012), the standing of Plaintiffs Rubinsohn and Nypl is not addressed. The Court previously dismissed the California Unfair Competition Law claim because Nypl, the only Plaintiff to assert that claim, lacks standing to assert it.

"Article III standing has three elements: (i) 'the plaintiff must have suffered an injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (ii) 'there must be a causal connection between the injury and the conduct complained of'; and (iii) 'it must be likely . . . that the injury will be redressed by a favorable judicial decision." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)), *cert. denied*, 142 S. Ct. 757 (2022). Standing must be demonstrated for each claim. *Town of Chester v. Laroe Estate, Inc.*, 137 S Ct. 1645, 1650 (2017).

The Second Circuit has not decided whether Plaintiffs may rely on their pleadings or must proffer evidence to show standing at the class certification stage. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ("[W]e need not, and do not, decide whether plaintiffs generally may rely on allegations in their complaint to establish standing at the class-certification stage."). The elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *accord In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903, 2021 WL 3406374, at *4 (S.D.N.Y. Aug. 4, 2021). "[T]he showing that must be made in order to withstand a dismissal for lack of standing increases as the suit proceeds." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). At the class certification stage, "Rule 23 does not set forth a mere pleading standard" and

"[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Factual findings at the class certification stage are based on the preponderance of the evidence standard. *Mazzei v. Money Store*, 829 F.3d 260, 268 & n.8 (2d Cir. 2016). It follows that Plaintiffs must proffer some evidence at the class certification stage to show that it is more likely than not that they have standing. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 531-32 (S.D.N.Y. 2018).

Plaintiffs have alleged that McCarthy and Jolly suffered an injury traceable to Defendants as a result of their purchase of foreign currency because Defendants and their co-conspirators manipulated the rate at which the U.S. Dollar and foreign currencies are exchanged. Based on the discovery in this case so far, Plaintiffs have shown that McCarthy and Jolly directly purchased foreign currency from at least one Defendant. Defendants do not dispute this evidence at this time. This is sufficient to show standing at this time.

To require more granular evidence of injury at this stage of the litigation, as Defendants urge, would collapse the standing inquiry into the merits inquiry, a practice disfavored in this Circuit. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) ("We have cautioned against arguments that would essentially collapse the standing inquiry into the merits . . . ." (internal quotation marks omitted)). After discovery showing the extent of Plaintiffs' injuries, if any, "Defendants may certainly test [Plaintiffs'] standing . . . by requesting an evidentiary hearing or by challenging [Plaintiffs'] standing on summary judgment or even at trial." *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003); *accord A.H. v. French*, No. 20 Civ. 151, 2021 WL 3619688, at *10 (D. Vt. Aug. 16, 2021).

### C. Class Certification

Plaintiffs seek to certify a class under Federal Rule of Civil Procedure 23(b)(3) of all consumers and businesses in the United States who directly purchased supracompetitive foreign currency at Benchmark exchange rates from Defendants and their co-conspirators for their own end use at least since January 1, 2007, to December 31, 2013. Class certification is denied because Plaintiffs have not shown that common questions will predominate over individual questions, and because the proposed class is a "fail-safe class."

Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Where, as here, class certification is sought pursuant to Rule 23(b)(3), a plaintiff must also show (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Second Circuit "has also 'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *In re Petrobras Secs.*, 862 F.3d 250, 260 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)); *accord In re Kind LLC "Healthy & All Nat." Litig.*, 337 F.R.D. 581, 594 (S.D.N.Y. 2021).

The Second Circuit gives Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)

(citation omitted); *accord B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17 Civ. 2738, 2021 WL 234550, at *9 (S.D.N.Y. Jan. 19, 2021). Plaintiffs nevertheless must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016); *accord In re Perrigo Co. PLC Secs. Litig.*, 493 F. Supp. 3d 291, 294 (S.D.N.Y. 2020). A certifying court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Shahriar*, 659 F.3d at 251 (citing *In re IPO Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)); *accord In re Perrigo Co.*, 493 F. Supp. 3d at 294.

### 1. Predominance

Plaintiffs have failed to establish predominance -- that common issues will predominate over issues affecting only individual class members. *See* Fed. R. Civ. P. 23(b)(3). "The [predominance] requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (internal quotation marks omitted). "The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Mazzei*, 829 F.3d at 272 (internal quotation marks and alteration omitted); *accord Scott*, 954 F.3d at 513.

To determine predominance, a court "must assess (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each

class member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class[-]wide basis, or whether they will be overwhelmed by individual issues." *Scott*, 954 F.3d at 512 (internal quotation marks omitted). "This analysis is 'more qualitative than quantitative,' and must account for the nature and significance of the material common and individual issues in the case." *Petrobras*, 862 F.3d at 271 (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 197 (5th ed. 2012)) (citing *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). Two predicate questions must be addressed in the predominance analysis: (1) whether a given issue is "material to Plaintiffs' class claims," and (2) whether determination of that issue is "susceptible to generalized class-wide proof." *Petrobras*, 862 F.3d at 271. "Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 61 (2d Cir. 2020) (summary order) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)).

"The three required elements of an antitrust claim are (1) a violation of antitrust law; (2) injury and causation; and (3) damages." *Cordes & Co. Fin. Servs, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (alterations omitted); *accord In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 435 (S.D.N.Y. 2019). "The analysis of claims brought under California's Cartwright Act 'mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act.'" *FTC v. Shkreli*, No. 20 Civ. 706, 2022 WL 135026, at *34 (S.D.N.Y. Jan. 14, 2022) (quoting *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citation omitted)); *see also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F. 4th 103, 120-21 (2d Cir. 2021) (discussing the instructiveness of federal antitrust statutes for analysis of the Cartwright Act). The parties do not dispute that proof common to the class can be offered to show a violation of antitrust law,

here a conspiracy to fix prices. But individualized proof of each trade and each trading day will be required to show if and to what extent each retail purchaser was actually injured by the alleged conspiracy. With the retail purchases at issue during a putative class period extending from 2007 to 2013, the evidence would be overwhelming.

The issue of whether and to what extent each purchaser was injured by the alleged conspiracy is obviously material to (1) the cause of action which requires proof of injury, causation and damages, (2) standing which requires proof of injury-in-fact, and (3) class membership as discussed below under the heading fail-safe class. The nature of the alleged conspiracy in this case is the reason that common proof will not suffice. This case involves alleged intermittent, up-and-down manipulation of foreign exchange rates resulting in a proposed class of retail purchasers, each of whom may have been benefitted, harmed or unaffected by the alleged manipulated prices. That is what is meant by describing the conspiracy as "episodic" and "multi-directional." These terms do not excuse or mitigate the allegedly unlawful conduct, as Plaintiffs seem to think, but they do describe characteristics of the conspiracy that is alleged.

The resulting fact-intensive inquiries would far outweigh any economies achieved through certification of the putative class under Rule 23(b)(3). *See Mazzei*, 829 F.3d at 272 (upholding decertification where "the fact-finder would have to look at every class member's loan documents to determine who did and who did not have a valid claim"); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14 Civ. 8175, 2018 WL 679495, at *5 (S.D.N.Y. Feb. 1, 2018) (declining to certify class where standing and class membership would need to be determined on individual basis); *see also Petrobras*, 862 F.3d at 274 ("The predominance analysis must account for such individual questions, particularly when they go to the viability of each class member's claims.").

Some of those individualized inquiries are described below. Because Plaintiff has not shown that common issues predominate, class certification is denied.

### a. Individualized Proof of Manipulation on Each Transaction Day (Injury and Causation)

Plaintiffs have not proposed a methodology to show through common proof the days and times that Defendants allegedly manipulated benchmark rates, which benchmark was manipulated or the direction in which spot market prices allegedly were moved. Plaintiffs cannot establish that class members were injured on any particular day without a day-by-day individualized analysis.

The question of whether class members purchased foreign currency on a day that prices were manipulated is not susceptible to generalized proof. The conduct Plaintiffs allege was multi-directional and episodic. There is no evidence that manipulative conduct occurred every day during the class period. Even the plea agreements appended to the complaint describe the collusive conduct as "near daily." Nor is there evidence that the conspiracy had a consistent effect every day of the class period. Even assuming manipulative conduct every day, nothing in the record shows a consistent effect of the manipulation and whether it acted to putative class members' benefit or detriment on any given transaction. Plaintiff's expert, Mr. Saba, did not propose a methodology for identifying when and by how much particular spot market rates may have been manipulated on particular days, and admitted that without that information he could not determine if a retail customer paid a "supracompetitive" exchange rate -- in other words, whether the customer was injured by unlawful conduct.

Plaintiffs contend that no individualized inquiry is necessary because the plea agreements show that the spot market prices were corrupted, and Defendants incorporated those prices into

the retail market. But Plaintiffs ignore the aspects of the plea agreements that contradict their argument. The plea agreements state that the traders attempted to move benchmarks sometimes downward and sometimes upward. And the TAC alleges a conspiracy to "increase or decrease prices." Plaintiffs point to no evidence that the manipulation consistently resulted in an overcharge. Plaintiffs' argument that no individualized inquiry is required because the class, by definition, includes only those who were overcharged misses the point. Plaintiffs offer no method of proving on a generalized basis who was or was not overcharged.

Plaintiffs cite *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018), to argue that the damages in this case are susceptible to common proof, but *LIBOR* is distinguishable. The Court in *LIBOR* emphasized that the certified OTC class could establish injury with common proof -- that plaintiffs "will need to offer classwide evidence that actual published LIBOR was suppressed" because the plaintiffs alleged that the defendants persistently suppressed the benchmark and thereby moved prices in only one direction. *LIBOR*, 299 F. Supp. 3d at 472, 590, 595. Plaintiffs' proposed class in this case is much more like the class rejected in *LIBOR*. The rejected class, like the class Plaintiffs propose, was "indeterminate not only as to the days on which trader-based manipulation occurred, but also the direction of manipulation on those days." The court in *LIBOR* aptly held that "[d]irectional differences" in the alleged manipulation were "particularly corrosive" for purposes of class certification. *Id.* at 538-39.

### b. Individualized Proof of the Amount of Damages

Plaintiffs have not proposed a reliable methodology for calculating damages through common proof. Plaintiffs, relying on Mr. Saba's report, contend that damages can be proven on a class-wide basis by applying the overcharge used by the Department of Justice in calculating the

recommended fine in the Plea Agreements or determining some other overcharge. But there is no evidence that the rate of any overcharge was consistent, or that Mr. Saba's proposed rate of overcharge -- three pips utilized by the Department of Justice or some other not-yet-determined rate -- has any factual or evidentiary relationship to what occurred. Mr. Saba's proposal necessarily produces an average estimate of damages. That approach is particularly inapt in this case because it "masks the existence of uninjured class members." *See In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 62 (S.D.N.Y. 2020). Plaintiff's model provides no means of screening out these class members.

Individualized proof would also be necessary to determine a purchaser's net damages. As discussed above, damages incurred in one transaction must be reduced by any benefit the purchaser may have received in other transactions. *See Sonterra*, 277 F. Supp. 3d at 563; *In re LIBOR*, 2016 WL 7378980, at *18. If a putative class member purchased currency on a day with decreased prices due to manipulation and purchased currency on a different day with increased prices due to manipulation, the effect of the manipulation needs to be netted out for that class member. Plaintiffs have offered no basis for using common proof to calculate the net damages suffered by putative class members.

### 2. Fail-Safe Class

Class certification is denied for the additional reason that the proposed class is a "fail-safe" class. The proposed class is limited to those who "purchased supracompetitive foreign currency." The inclusion of "supracompetitive" in the class definition makes the class a fail-safe class, which would require litigation of each class member's claim on the merits to determine who is in the class. These manageability problems can be characterized as undermining superiority -- the Rule 23(b)(3) requirement that a class action be superior to other methods of

adjudication.[2]  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp 3d 430, 529 (S.D.N.Y. 2018) (noting that some courts have held that "fail-safe classes create manageability problems bearing on superiority under Rule 23(b)(3)").

A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership.  *In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.").  Courts in this circuit typically refuse to certify fail-safe classes unless the fail-safe aspect can be overcome by redefining the class or some other means.  *See, e.g.*, *DiDonato v. GC Servs. Ltd. P'ship*, No. 20 Civ. 2154, 2021 WL 4219504, at *8 (S.D.N.Y. Sept. 16, 2021); *Bondi v. New Rochelle Hotel Assocs.*, No. 17 Civ. 5681, 2018 WL 7246962, at *14 (S.D.N.Y. Dec. 7, 2018), *R. & R. adopted*, No. 17 Civ. 5681, 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019).

"[F]ail-safe classes tend to be defined in terms of a 'legal injury' or 'by reference to a particular statute, regulation, or contract that has been allegedly violated or breached.'"  *Garcia v. Execu|Search Grp., LLC*, No. 17 Civ. 9401, 2019 WL 689084, at *2 (S.D.N.Y. Feb. 19, 2019) (quoting *Gregory v. Stewart's Shops Corp.*, No. 14 Civ. 33, 2016 WL 8290648, at *18 (N.D.N.Y. July 8, 2019)).  Such classes can be problematic for two reasons.  First, they may be unfair to the defendant because they may give a plaintiff a second, unwarranted chance to establish liability.  Second, the class may be unmanageable because a determination on the merits would be required

---

[2] Defendants make this argument invoking requirement that the class be "ascertainable."  But their objection is not that class membership cannot be determined with objective criteria, rather that this determination would be too onerous.  The Second Circuit has expressly declined to incorporate a requirement of administrative feasibility into the ascertainabiltiy doctrine.  *In re Petrobras Sec.*, 862 F.3d 250, 264-65 (2d Cir. 2017). ‼

18

to identify class members who would receive notice and an opportunity to opt out. *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (refusing to certify fail-safe class where the class definition included two contested elements of liability because certification would allow putative class members to seek a remedy but not be bound by an adverse judgment, and because the class was unmanageable because it could not be determined to whom notice should be sent); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (declining to "promot[e] a so-called "fail-safe" class[], whose membership can only be determined after the entire case has been litigated and the court can determine who actually suffered an injury").

Here the same individualized inquiries that defeat the predominance requirement make the class definition unmanageable as a fail-safe class. By incorporating the merits inquiry into the class definition, the individual inquiries would first arise in the Rule 23(b)(3) notice process in order to determine who receives notice of the class action. As discussed above, the alleged benchmark manipulation was not unidirectional, so putative class members could have made money, lost money or experienced no impact for each purchase they made. Plaintiff has offered no means to determine class membership based on common evidence or in some other administratively feasible way. The inclusion of "supracompetitive" in the class definition makes this an impermissible "fail-safe" class. *See generally LIBOR*, 299 F. Supp. 3d at 528-29 (discussing the propriety of certifying fail-safe classes).

Plaintiffs incorrectly argue that the inclusion of "supracompetitive" is superfluous, so its inclusion does not create a bar to certification. But, if "supracompetitive" is omitted from the class definition, the class would be impermissibly overbroad because Plaintiffs have not offered any evidence to suggest that every purchaser of foreign currency from 2007 to 2013 experienced an injury or harm. Plaintiffs argue that all retail purchasers of foreign currency from Defendants

are included in the class definition because the retail market was corrupted by the incorporation of spot market prices in retail prices, but as discussed above, this argument masks that some purchasers experienced no economic harm and may have benefitted from the alleged manipulation.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for Rule 23 class certification is DENIED. Defendants' *Daubert* motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' *Daubert* motion is DENIED. The request for oral argument is denied as moot. The Clerk of Court is directed to close the motions at Dkt. Nos. 716, 731 and 745.

Dated: March 18, 2022
       New York, New York

                                    _____
                                    LORNA G. SCHOFIELD
                                    UNITED STATES DISTRICT JUDGE